CHESHIRE, OCTOBER TERM, 1818.

### ABRAHAM EUSTIS *versus* ELIJAH PARKER.

Where S. by his will gave to the town of D. 5000 dollars for the support of a congregational minister, and also a large real and personal estate for the support of schools, and all the subscribing witnesses to the will were inhabitants of the town of D. and members of the congregational society, and annually taxed for the support of schools—held that the subscribing witnesses were " *credible witnesses,*" within the meaning of the statute of Feb. 3, 1789, sec. 1.

THIS was an appeal from a decree of the judge of probate in this county, allowing a certain instrument as the will of the Rev. *Edward Sprague.* The parties agreed to submit the cause to the decision of the court upon the following facts.

The Rev. *E. Sprague,* being seized and possessed of real and personal estate to the value of 30,000 dollars, on the 18th December, 1817, made the instrument offered for probate, in which he gave to the town of *Dublin* 5000 dollars

for the support of a minister of the congregational persua-sion,—to his nephews and nieces one dollar each,—to his wife, the use of all his real and personal estate, debts and legacies being first paid, during her life,—to the town of *Dublin* all the rest of his estate, to be kept for the use of schools. The subscribing witnesses to the instrument were *Thaddeus Morse, W. Greenwood 2d*, and *J. Learned*, all, at the time of the execution of the instrument, and still, inhabitants of the town of *Dublin*, and members of the congregational so-ciety in that place, and annually taxed in that town for the support of schools. And it was agreed that if the court should be of opinion that the said *Morse, Greenwood* and *Learned* were to be deemed " *credible witnesses*" to the execution of said instrument, within the meaning of the statute of Feb. 3, 1789, sec. 1, then the decree of the judge of probate to be affirmed, otherwise reversed.

The cause was argued here at the last term by *Ainsworth* and *Metcalf* for *Eustis*, the appellant, and by *Upham* for *Parker* the appellee.

*Per curiam.* It is objected that the subscribing witnesses to the instrument now before us for probate are not " *credible witnesses*" within the meaning of the statute—*Laws* 198—because at the time the instrument was executed, they were, and still are, inhabitants of *Dublin*, and members of the cor-poration to which a great part of the property is to go, if it be allowed as a last will, and therefore directly interested. The word " *credible*" is used in the statute in the sense of *competent.—5 Mass. R.* 228. *Amory* vs. *Fellows.—12 East.* 250. *Belison* vs. *Bromley.—Phillips' Evidence* 375.—The question then is, are these witnesses competent to testify in this cause ? If they be not, they were not credible wit-nesses within the meaning of the statute, at the time when the instrument was executed, for their interest was the same then as it is now.

The only interest these witnesses have in this cause is as inhabitants of the town of *Dublin*, a publick corporation, to which a donation is made by this instrument, for the support

of a minister, and of schools. It has always been the practice in this state, in cases of this kind, to distinguish between *publick* and *private* corporations, and the general rule has been to admit the members of publick, and reject the members of private corporations, as witnesses, in cases where the corporate interests were in question. The propriety of this distinction is now called in question, and we are called upon to examine the grounds of it.

It is clear that the members of private corporations have a direct interest in the corporate property. Corporations of this kind are erected for the benefit of the members. All the property belonging to them is in fact the property of the members. Each individual has an interest that can be bought and sold, may be seized upon an execution, and is assets in the hands of his executor or administrator. Any gain or loss of corporate property, is the gain or loss of the members. Membership is usually incident to an interest in the corporate property, and depends upon it. Indeed, every member has so clearly an interest in the corporate concerns, which ought to exclude him as a witness in all causes where the corporate interests are in dispute, that no question seems ever to have been made upon the subject.

Publick corporations, such as towns, counties, &c. are in their nature widely different from private corporations.— They are created, not for private emolument, but for great publick purposes. Thus it is the business of towns to collect the suffrages of the people for governour, counsellors, senators, &c. annually; to make provision for the support and maintenance of publick teachers of piety, religion and morality; to provide for the support of the poor; to maintain schools for the instruction of the young; to make and keep in repair publick highways; and to assess and collect publick taxes, &c. In general, their duties are imposed and their privileges granted, either by the constitution or the general laws of the state. All the corporate property is devoted to publick purposes. No individual has any direct private interest in it; no interest that he can release or con-

vey to another. It is a common concern of all the members that the corporation should possess sufficient funds to answer all its purposes; but the private interest of individuals is no otherwise affected by the loss or gain of corporate property, than as it may tend to augment or diminish the contributions which they may be eventually called upon to make for corporate expenses. In fact, an inhabitant of a town has no other interest in the property of the town than he has in the property of the state, or of the *United States.* —5 *Mass. R.* 90. *Commonwealth* vs. *Ryan.* In determining whether this interest is sufficient to render the inhabitants of towns incompetent witnesses for the towns in which they reside, very little aid can be derived from English authorities, because in *England* there are very few, if any, corporations, which exactly resemble our town corporations. The charters of their cities, &c. usually confer particular private privileges upon the members of the corporation, so that the corporation is not merely publick, but must be considered as in some respects a private corporation. And most of their decisions upon this point are so loosely reported, that it does not distinctly appear what influence this circumstance may have had upon the decisions in particular cases. It is however probably owing to this circumstance that no general rule as to the admission of corporators as witnesses has ever been established in *England.*—2 *Shower* 148. *City of London* vs. *the Unfree Merchants.*—1 *Ventris* 351.—2 *Swintz* 231.—2 *Shower* 48.—6 *Mod. R.* 307. *Law of Evidence* 130.—*Buller's N. P.* 290.—5 *D. & E.* 174. *Burton* vs. *Hinde.*—*Peake's N. P. Cases* 153. *Weller* vs. *The Governours of the Foundling Hospital.*—3 *Burrows* 1847. *Hesketh* vs. *Braddock.*—*Phillips' Evidence* 37.— *Peake's Evid.* 102, 114.

There is, however, a class of cases in the English books which seem to be directly in point, where the question is whether a parishioner is a competent witness in a cause where the parish is contesting the settlement of a pauper, &c.—4 *D. & E.* 19. *Rex* vs. *Prosser.*—5 *D. & D.* 667. *Rex*

Eustis
*vs.*
Parker.

vs. *South Lynn.*—2 *East.* 561. *Rex* vs. *Kirdford.*—10 *East* 292.—*Rex* vs. *Kitterby*, 15 *East.* 470 & 57.

It seems to have been well settled, that a *rated* parishioner was not in such cases a competent witness, although one who was *liable* to be, but not actually rated, was. But this rule was found to be so inconvenient, that in 1814 the law on this subject was altered by statute, and now by the statute of 54 Geo. 3, c. 170, sec. 4, *rated* parishioners are competent witnesses in all cases relating to the settlement of paupers, &c.—*Phillips' Evid.* 93.

In *New-York* it has been decided that a freeholder and inhabitant of a town, was a competent witness for the town in a case where the town was interested.—1 *Johnson* 486. *Falls & al.* vs. *Belknap.*—And where a justice of the peace tried a *qui tam* action, instituted to recover a penalty, one moiety of which went to the support of the poor in the town of which he was an inhabitant, his interest was held to be too remote and contingent to be regarded.—11 *Johnson* 76. *Corwein* vs. *Hames.* In a suit to recover a penalty given to a town for the support of its poor, a *rated* inhabitant was decided to be a competent witness for the town.—12 *Johnson* 285. *Bloodgood* vs. *The Overseers of the Poor of Jamaica.*— *See also* 9 *Johnson* 219. *Gilpin* vs. *Vincent.* But in an action of trespass brought against certain persons, inhabitants of *Staten Island*, for building fishing huts, &c. on land claimed by the plaintiff, one of the inhabitants was held to be an incompetent witness to prove a right in all the inhabitants to the fishery in question.—2 *Johnson* 170. *Jacobson* vs. *Fountain & al.*

In *Connecticut* they have adopted the same rule which we have adopted in this state, and it has been decided there that an inhabitant of a parish was a competent witness to a will, in which a large estate was devised to the parish for the support of its schools.—*Swift's Evid.* 57, 58.—1 *Day* 37.

In *Massachusetts* it is provided by their statute, cap. 32, that in all actions in which towns, parishes, &c. are parties or interested, the inhabitants shall be competent witnesses,

provided they have no other interest than merely as inhabitants. But they hold that an action against the inhabitants of a county cannot be sued in the court of common pleas for such county.—7 *Mass. R.* 461. *Hawkes* vs. *The Inhabitants of Kennebunk, and* 5 *Mass. R.* 90. A justice of the peace has no jurisdiction of an action to recover a penalty, if a portion of the penalty is to go to the town of which he is an inhabitant.—13 *Mass. R.* 324. *Pearce* vs. *Atwood.* An inhabitant of another state is a competent witness for such state, in the trial of an action to which such state is a party.—14 *Mass. R.* 296. *Connecticut* vs. *Bradish.*

From this view of the law upon this subject, as it now stands in *England,* and all the neighboring states, it seems to have been found necessary to admit individuals as witnesses in causes where they have the same interest as the witnesses in this case. In *England* and *Massachusetts* they have been rendered competent witnesses by statute; in *New-York* and *Connecticut,* by a series of judicial decisions adapting the common law to the situation and circumstances of the country. The objection then to the rule which has been adopted in this state seems to be, not that it is improper and unreasonable in itself, but that it is a departure from the common law, that can be warranted only by statute. But it is incumbent upon those who make this objection, to shew that the rigid rule of the common law was adopted in this state. It is undoubtedly true, that the great body of the common law is in force here; but it is equally true that many of its principles have been rejected, as not adapted to the situation of the country.

Whether particular principles of the common law were or were not applicable here, has frequently been the subject of judicial decision; and the common law, as modified by those decisions, has been expressly adopted by the constitution of this state. "All the laws which have heretofore "been adopted, used and approved in the province, colony, "or state of *New-Hampshire,* and usually practised on in "the courts of law, shall remain and be in force until alter-"ed and repealed by the legislature." If, then, we find the

rule, that members of publick corporations are to be admitted as competent witnesses in these cases, reasonable and proper in itself, and that as far back as the history of the law on this point can be traced, it has been used and approved in our courts, we are not at liberty to overturn it.—Many of our most important principles of law, which cannot now be shaken without great public inconvenience and mischief, rest on the same ground alone. Indeed, the antient common law has no better foundation. We are, therefore, of opinion that the witnesses to this instrument were, at the time of its execution, credible witnesses, within the meaning of the statute, and are now competent witnesses to prove the execution of it. The decree of the court below must, therefore, be affirmed.